UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KECIA PORTER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>USAA CASUALTY INSURANCE COMPANY,<br><br>　　　　Defendant. | No. 19 CV 3912<br><br>Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is defendant USAA Casualty Insurance Company's motion for summary judgment. [120].[1] Plaintiff Kecia Porter has filed a response [125], and defendant has replied [131]. For the following reasons, the motion is granted.

**Background**

This insurance-coverage dispute arises out of a car accident that occurred in 2009. On August 24, 2009, plaintiff was riding in a car driven by her then-husband, Kelly Porter, that collided with another vehicle. [122] 1-2, at ¶¶ 3-4. Plaintiff contends that she injured her back, neck, knee, and shoulder in the accident, and that she continues to experience pain in these areas. [*Id.*] 2, at ¶ 6. After the accident, plaintiff made a claim under an insurance policy that Kelly Porter held with defendant; plaintiff also made a claim against the at-fault driver of the other vehicle. [122-2] 2; [125] 2. Plaintiff settled these claims in 2017 by accepting a $20,000 payment, which included a $5,000 payment from defendant on behalf of Kelly Porter. [122] 2, at ¶ 8; [128] 4, 6.

At the time of the accident, plaintiff held her own automobile insurance policy with defendant. The policy, which was effective from April 20, 2009, to October 20, 2009, provided uninsured and underinsured motorist's coverage for bodily injury with limits of $100,000 per person and $200,000 per accident. [122-1] 2, at ¶¶ 9-10. The policy also included a cooperation clause:

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number.

> We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
>
> \*\*\*
>
> B.  A person seeking coverage must:
>
>  1. Cooperate with us in the investigation, settlement or defense of any claim or suit;
>
> \*\*\*
>
>  3. Submit, as often as we reasonably require:
>
> \*\*\*
>
>  b. To examination under oath. The examination must be signed.

[122-4] 47.

On August 1, 2016, plaintiff submitted an underinsured motorists claim (UIM) to defendant, seeking coverage for the injuries she sustained in the 2009 accident. [37] 8, at ¶¶ 1-2. Defendant reviewed the claim and "confirmed that [plaintiff] would be entitled to [coverage] less" any amount she received from her then-pending claim against the at-fault driver. [128] 63. In December 2016, defendant's claims examiner advised plaintiff that some of her medical records had been received, while others were missing but had been requested. [*Id.*]. Defendant's efforts to obtain the records continued through mid-2017, but as late as July 2017 many records were still outstanding. *See* [122-5] 1-2 (list of medical records not received as of May 23, 2017); *see also* [128] 63-64 (letter from defendant to Illinois Department of Insurance in response to complaint filed by plaintiff recounting, *inter alia*, efforts to gather medical records). Plaintiff complained that the claims process was taking too long and asked that her case be reassigned to a new examiner. [128] 63.

As the investigation continued, defendant discovered that plaintiff had been involved in two car accidents after the 2009 crash: one in December 2013 and another sometime in 2015. [122] 5, at ¶ 13; [122-6] 8, at 29:1-16; [*id.*] 10, at 35:18-36:19; *see also* [128] 63 (letter to Illinois Department of Insurance stating that defendant's claims manager discussed the 2013 and 2015 accidents with plaintiff on July 26, 2017). At her deposition, plaintiff testified that she sustained a closed-head concussion in the 2013 accident, but she did not recall if she sustained other injuries. [122-6] 9, at 33:2-15. Plaintiff was also injured in the 2015 accident, but she did not remember the nature or extent of those injuries. [*Id.*] 10, at 34:3-35:1.

On August 30, 2017, the claims examiner called plaintiff and advised her that "a detailed review of the claim" had been completed, but "additional medical documentation" was "still pending." [128] 64. The examiner also explained that an examination under oath (EUO) would "assist [plaintiff] and [defendant] in understanding what injuries were related to the August 24, 2009 accident and what injuries were not." [*Id.*]. In January 2018, after plaintiff rejected defendant's offer to settle the claim for $25,000 and made a demand for $150,000, *see* [*id.*] 27, defendant invoked the policy's cooperation clause and requested that plaintiff participate in an EUO. [*Id.*] 3; *see also* [*id.*] 30 (letter from defendant dated February 21, 2018 reiterating request for EUO). On March 1, 2018, the parties confirmed that the EUO would take place on April 11, 2018. [122-7] 2.

Plaintiff appeared for the EUO, but she informed the attorney representing defendant that she "had limited time due to transportation issues[.]" [122-10] 1. During the EUO–which lasted, according to plaintiff, "two hours or more" [122-6] 25, at 7:22-23–plaintiff stated that she "suffered injuries to [her] back as well as [her] hip." [122-10] 2. Plaintiff also explained that, immediately after the accident, she sought treatment for her injuries at Advocate Health Center – Beverly Center and from Dr. Chandra Anand. [*Id.*].

After the EUO concluded, plaintiff sent defendant a "cease and desist letter regarding . . . any and all inadmissible questioning, ordered by [defendant] as EUO[.]" [122-9] 1. Plaintiff asserted that defendant was using the EUO process to "intentional[ly] delay paying" her "valid UIM claim." [*Id.*]. Calling the EUO "illegal," plaintiff asked that defendant "supply me with any legal right you have to continue to question me under my policy provisions; should you choose to continue with this illegal EUO." [*Id.*] (emphasis in original).

On May 18, 2018, defendant sent plaintiff a letter requesting that she participate in a continued EUO. [122-10] 1. In support, defendant advised plaintiff that her insurance policy authorized defendant to "ask an insured to submit to an EUO multiple times so long as it is reasonable and is required to aid in the investigation of said claim." [*Id.*]. Defendant then explained that plaintiff had created "a self-imposed time limit" at the first EUO when she left early due to transportation issues, which "did not allow us ample time to conduct a thorough examination under oath regarding the merits of your claim." [*Id.*] 2. Defendant stated that, despite plaintiff's assertion at the first EUO that she was treated after the accident at Advocate Health Center and by Dr. Anand, records from these providers "were never provided to our office for review prior to your EUO." [*Id.*]. Defendant explained that it had requested and expected to receive records from Advocate Health by mid-June, but that without those records and records from Dr. Anand, "the only document[ed] injury for the accident of August 2009 may be a soft tissue sprain strain injury of your neck and maybe shoulder." [*Id.*] 3. "[B]y gathering medical records and requesting a continuation of your Examination Under Oath," defendant concluded, "we are

3

attempting to document what injuries, if any, you sustained in the accident which you were involved in August 2009." [*Id.*]. Defendant advised that the continued EUO would proceed on June 27, 2018, but that plaintiff could contact defendant if she were unavailable that day. [*Id.*]. However, plaintiff did not appear for the continued EUO. [122-6] 26, at 98:6-99:8.

In December 2018, plaintiff, proceeding pro se, sued defendant in the Circuit Court of Cook County, Illinois, alleging that defendant (1) breached the insurance contract by failing to pay her UIM claim, and (2) unreasonably and vexatiously delayed paying her claim in violation of 215 ILCS 5/155. [1]; [120] 1; [121] 4. Defendant removed the case based on diversity jurisdiction.[2] After the conclusion of discovery and the exhaustion of settlement discussions, defendant filed the pending motion for summary judgment.[3]

## Standard of Review

A party is entitled to summary judgment only if it demonstrates that "there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016). In answering this question, the Court construes all facts and draws all reasonable inferences "in favor of the party against whom the motion under consideration was filed." *Richardson v. Chicago Transit Auth.*, 926 F.3d 881, 886 (7th Cir. 2019). "Evidence supporting or opposing summary judgment must be admissible if offered at trial, although depositions and other written testimony can substitute for live testimony." *Reyes v. Menard, Inc.*, No. 21 CV 359, 2022 WL 2757666, at *1 (N.D. Ill. Jul. 14, 2022).

---

[2] The Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Porter is an Illinois citizen and defendant is a citizen of Texas. *See* [1] 2-3, at ¶ 11. The parties consented to have a magistrate judge exercise jurisdiction over this case. [41].

[3] After briefing was complete, the Court discovered that defendant failed to comply with Local Rule 56.2, which requires that a party moving for summary judgment against an unrepresented party serve that party with its summary judgment papers, a copy of Federal Rule of Civil Procedure 56 and Local Rule 56.1, and a Local Rule 56.2 Notice. [134]. Plaintiff asserted that this failure prejudiced her because she did not know that it was necessary to file affidavits in response to defendant's motion. [143] 2-3. The Court gave plaintiff 30 days to file additional evidence in support of her opposition to defendant's motion and to supplement her memorandum of law, statement of materials facts, and exhibit list, *see* [144], but plaintiff did not file any additional evidence or supplement her previous filings.

**Discussion**

Defendant argues that it is entitled to summary judgment on plaintiff's breach-of-contract claim because the undisputed evidence establishes that plaintiff failed to perform her obligations under the insurance policy–namely, to cooperate with defendant in its investigation of her claim and participate in the continued EUO. [121] 4-5. Because there is no genuine dispute that plaintiff failed to sit for the continued EUO, defendant argues that no reasonable jury could find that plaintiff performed her obligations under the insurance policy. In a related vein, defendant argues that no reasonable jury could find that its conduct amounts to unreasonable and vexatious conduct. [*Id.*] 6-7. This is so, defendant maintains, because it investigated plaintiff's claim and requested an EUO to resolve the bona fide question over the extent to which plaintiff's injuries were attributable to the 2009 accident. [*Id.*] 6.

Plaintiff responds that a reasonable jury could find that she did not breach the cooperation clause because her attendance at the first EUO constitutes "substantial evidence of [her] attempt to cooperate with" defendant. [125] 6. Plaintiff also contends that any non-compliance on her part was not "so extreme" as to warrant summary judgment for defendant. [*Id.*] 7. Plaintiff argues that defendant waived its right to insist that she participate in an EUO and that, in any event, "the penalty for failure to satisfy the EUO condition is abatement not forfeiture." [*Id.*] 7-9. Regarding her Section 155 claim, plaintiff contends that defendant's delay in completing its investigation and refusal to settle her claim amounts to unreasonable and vexatious conduct. [*Id.*] 9-10. In support, plaintiff asserts that, while defendant claimed to be looking for medical records, "[i]t was [defendant] who 'destroyed' [her] records." [*Id.*] 9 (internal emphasis omitted). Plaintiff also contends that defendant's claims adjusters and attorneys told her that she was a liar and "they believed her injuries to be 'questionable[.]'" [*Id.*] 11.[4]

**A. Breach of Contract**

To prevail on a breach-of-contract claim under Illinois law, plaintiff must establish "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Catania v. Local 4250/5050 of Commc'ns Workers of Am.*, 834 N.E.2d 966, 971 (Ill. App. 2005).

Under "long-standing Illinois precedent," "an insured's failure to cooperate" with an insurer in the investigation of a claim is "a valid defense" to a breach-of-

---

[4] In deciding the motion, the Court is mindful both of its obligation to "construe pro se filings liberally" and the rule that "even a pro se litigant like the plaintiff is required to 'present a cogent legal argument with citations to authority and relevant parts of the record.'" *Alexander K. v. Kijakazi*, No. 20 C 5819, 2021 WL 4169570, at *8 (N.D. Ill. Sept. 14, 2021) (quoting *Greenwell v. Saul*, 811 F. App'x 368, 370 (7th Cir. 2020)).

5

contract claim. *Piser v. State Farm Mut. Auto. Ins. Co.*, 938 N.E.2d 640, 646 (Ill. App. 2010). "Typically the insurer has little or no knowledge of the facts surrounding a claimed loss, while the insured has exclusive knowledge of such facts. The insurer is, therefore, dependent on its insured for fair and complete disclosure; hence, the duty to cooperate." *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 327 (Ill. 1991). "The cooperation clause obligates the insured to disclose all of the facts within his knowledge and otherwise to aid the insurer in its determination of coverage under the policy." *Piser*, 938 N.E.2d at 646.

"To avoid coverage under the policy based upon an insured's alleged failure to cooperate, the insurer must show that: (1) the insured breached the duty to cooperate; and (2) the insurer was substantially prejudiced by that failure." *K&S Inv. Prop. Grp., LLC v. Westfield Ins. Co.*, Case No. 20-cv-2426, 2021 WL 148876, at *3 (N.D. Ill. Jan. 15, 2021). "In order to establish a breach of a cooperation clause, the insurer must show that it exercised a reasonable degree of diligence in seeking the insured's participation and that the insured's absence was due to a refusal to cooperate." *United Auto Ins. Co. v. Buckley*, 962 N.E.2d 548, 556 (Ill. App. 2011). Moreover, "[t]he refusal to cooperate must be willful." *Id.* "Proof of substantial prejudice requires an insurer to demonstrate that it was actually hampered in its defense by the violation of the cooperation clause." *Piser*, 938 N.E.2d at 648.

"[W]hether an insured has breached a cooperation clause is a question of fact," but "Illinois courts acknowledge that, in some circumstances, an insured's refusal to cooperate might support a finding of summary judgment for the insurer[.]" *K&S Inv. Prop. Grp.*, 2021 WL 148876, at *3. "[C]ourts reserve granting summary judgment based upon an insured's breach of a cooperation clause for only 'the most extreme of cases.'" *Id.* (quoting *Hartshorn v. State Farm Ins. Co.*, 838 N.E.2d 211, 214 (Ill. App. 2005)).

### 1. Breach of the Cooperation Clause

There is no dispute that plaintiff's insurance policy required her to cooperate with defendant in its investigation of her claim and to participate in an EUO "as often as [defendant] reasonably require[d]." [122-4] 47. Nor is there any dispute that, despite defendant's exercising a reasonable degree of diligence to secure plaintiff's participation, plaintiff flatly refused to participate in the continued EUO.

The undisputed evidence establishes that defendant made multiple requests that plaintiff participate in an EUO, and that these requests were supported by specific reasons. In August 2017, defendant suggested that an EUO would help the parties identify "what injuries were related to the August 24, 2009 accident and what injuries were not." [128] 64. In January 2018, defendant invoked the policy's cooperation clause and requested that plaintiff sit for an EUO. [*Id.*] 3. Defendant reiterated this request in a February 21, 2018 letter that also explained why

plaintiff's participation was required by her insurance policy. [*Id.*] 30. On March 1, 2018, defendant issued an amended notice of EUO confirming that the date for the EUO had been changed, at plaintiff's request, to April 11, 2018. [*Id.*] 35. Although the EUO proceeded on that date, in May 2018 defendant requested in writing that plaintiff sit for a continued EUO. [122-10] 1. Defendant gave two reasons for this request. First, defendant asserted that plaintiff's need to leave the EUO early due to transportation issues "created a self-imposed time limit" that "did not allow us ample time to conduct a thorough examination under oath regarding the merits of your claim." [*Id.*] 2. Second, defendant maintained that it had no medical records documenting two injuries–one to her back, the other to her hip–that plaintiff discussed at the EUO. [*Id.*]. While defendant was undertaking to gather those records, it reiterated that its request for "a continuation of your Examination under Oath" represented an "attempt[ ] to document what injuries, if any, you sustained in the accident which you were involved in August 2009." [*Id.*] 2. Defendant asked that plaintiff appear for the continued EUO on June 27, 2018 while indicating that the examination could take place on another date that was more convenient for plaintiff. [*Id.*] 3.

The undisputed evidence likewise proves that plaintiff failed to sit for the continued EUO. At her deposition, plaintiff admitted that she did not return for the continued EUO despite defendant's request that she do so. [122-6] 26, at 99:5-8. This was no mere error or oversight on plaintiff's part. To the contrary, after the first EUO ended, plaintiff sent defendant a cease-and-desist letter regarding "any and all inadmissible questioning ordered by [defendant] as EUO[.]" [122-9]. Plaintiff called the EUO "illegal," denied that defendant had the "legal right . . . to continue to question me under my policy provisions," and accused defendant of using the EUO process to "intentional[ly] delay paying a valid UIM claim." [*Id.*]. Finally, even after defendant moved for summary judgment based on plaintiff's refusal to sit for a continued EUO, plaintiff has maintained her refusal to complete the EUO. *Compare Hartshorn*, 838 N.E.2d at 215 (affirming grant of summary judgment to insurer based on breached cooperation agreement where, *inter alia*, "even in the face of defendant's summary judgment motion, plaintiffs have not stated clearly that they will cooperate further"), *with Crowell v. State Farm Fire & Cas. Co.*, 631 N.E.2d 418, 420 (Ill. App. 1994) (reversing grant of summary judgment to insurer based on breached cooperation agreement because "immediately upon learning of defendant's grounds for summary judgment, plaintiff offered to submit to a sworn deposition and answer any and all relevant questions").

Given the undisputed evidence of plaintiff's willful refusal to cooperate, the Court concludes that plaintiff's case is distinguishable from *Pick v. Associated Indem. Corp.*, 547 N.E.2d 555 (Ill. App. 1989), and *Woltman v. Am. States Ins. Co.*, No. 05-2198, 2006 WL 1305236 (C.D. Ill. May 9, 2006), on which plaintiff relies. *See* [125] 6-7.

7

In *Pick*, an insured agreed to submit documents requested by his insurer and participate in an EUO. 547 N.E.2d at 557-58. But the insured "did not produce many of the documents requested," and, although the insured "was examined under oath for 1½ hours, the examination was concluded due to a time conflict with plaintiff's attorney." *Id.* "The examination was rescheduled numerous times but was cancelled each time by plaintiff or his attorney," but there was no evidence that plaintiff ever refused to sit for the remainder of the EUO. *Id.* The state appellate court reversed the grant of summary judgment to the insurer, holding that "[w]hether plaintiff's actions amounted to substantial compliance with the policy is a question of fact" that precluded summary judgment. *Id.* at 560. In *Woltman*, the insured repeatedly failed to produce documents requested by his insurer and did not appear for an examination under oath (which the court referred to as a deposition). 2006 WL 1305236, at *1-2. The insured explained that "he did not appear [for the EUO] because he had not been provided with copies of the tapes of his interview with [an insurance company investigator] or with fire reports" relating to the alleged loss. *Id.*, at *2. Although the insurer later provided these materials to the insured, the insurer never "attempted to reschedule the deposition after [the insured] received the tapes and documents." *Id.* The insurer moved for summary judgment based on a breach of the cooperation clause, but the district court denied the motion. Although the insured's "cooperation . . . may not have been exemplary," the court concluded that the evidence was "not so extreme as to allow for summary judgment." *Id.*, at *3. In particular, the court highlighted the insurer's failure to reschedule the EUO after the insured received the interview tapes and fire reports that he did not have when the EUO was first scheduled. *Id.*

*Pick* and *Woltman* are easily distinguishable because neither case involved an insured who unequivocally refused to participate in an EUO. The evidence in *Pick* demonstrated that the EUO had been canceled several times, but at no point did the insured outright refuse to participate in the EUO. And in *Woltman*, the insurer dropped the ball by not rescheduling the EUO–even after it provided the insured with the materials that he lacked when the EUO was first scheduled. In contrast, plaintiff not only testified that she refused to attend the EUO, *see* [122-6] 26, at 98:6-99:8, but also sent defendant a cease-and-desist letter regarding the EUO, which she characterized as illegal and a stall tactic, *see* [122-9]. Plaintiff has persisted in this refusal even after defendant sought summary judgment based on a breach of the cooperation clause. *See Hartshorn*, 838 N.E.2d at 215. The Court is mindful of the Illinois cases that recognize that "where the insureds made some effort to comply with the insurer's requests for information, but their cooperation was either late or incomplete, the sufficiency of those efforts was a question of fact, and therefore inappropriate for summary judgment." *Hartshorn*, 838 N.E.2d at 214. But the evidence in this case does not permit a rational jury to find that plaintiff's "cooperation was either late and incomplete." After plaintiff attended the first EUO– and cut it short (something that plaintiff does not dispute)–plaintiff outright refused to cooperate. Even viewing this evidence in plaintiff's favor, no reasonable jury could

understand this evidence as anything other than what it was: a willful refusal to cooperate with defendant by sitting for the continued EUO.

Plaintiff's remaining arguments against summary judgment fare no better. First, plaintiff cites no evidence in the record to support her argument that defendant waived its right to insist on the EUO. *See* [125] 7. "Waiver is the intentional relinquishment of a known right and is established by words or conduct inconsistent with an insurer's right to rely on policy requirements." *Pick*, 547 N.E.2d at 559 (internal quotation marks omitted). Here, however, plaintiff points to no evidence from which a reasonable jury could find that defendant waived its right to insist on the EUO–and none of the undisputed evidence discussed above shows defendant acting inconsistently with its right to invoke the cooperation clause and request an EUO. Second, plaintiff's argument that the appropriate remedy for a breach of a cooperation clause is "abatement" of her claim has no basis in Illinois law. *See* [125] 8-9. Plaintiff relies on a decision from the Missouri Supreme Court, *Bartleman v. Humphrey*, 441 S.W.2d 335 (Mo. 1969), but Missouri law does not apply in this case. Illinois law is clear, moreover, that a breach of a cooperation clause is a "valid defense" to plaintiff's breach-of-contract claim, *Piser*, 938 N.E.2d at 646, that may–in cases like this one–eliminate the insurer's coverage obligations, *K&S Inv. Prop. Grp.*, 2021 WL 148876, at *3.

Even viewing the evidence in the light most favorable to plaintiff, any reasonable jury would find that defendant exercised a reasonable degree of diligence in seeking plaintiff's participation in the continued EUO, and that plaintiff's absence at the continued EUO was due to her willful refusal to cooperate with defendant.

## 2. Prejudice

Second, any reasonable jury would find that defendant was "substantially prejudiced by the insured's actions or conduct in regard to its investigation" of plaintiff's UIM claim. *Founders Ins. Co. v. Shaikh*, 937 N.E.2d 1186, 1193 (Ill. App. 2010).

In correspondence with plaintiff before and after the EUO, defendant explained that it needed more information to determine "what injuries were related to the August 24, 2009 accident and what injuries were not." [128] 64; *see also* [122-10] 2-3. A reasonable jury could find that this was a reasonable–and critical–inquiry because plaintiff was involved in two motor vehicle accidents after the 2009 crash. It was therefore incumbent upon defendant to determine which of plaintiff's injuries had been sustained in the 2009 crash–and were thus covered by the 2009 policy–and which had been sustained in the other crashes that were not covered by the policy. In addition, plaintiff disclosed at the EUO that she had received treatment at Advocate Health and from Dr. Anand immediately after the accident, but defendant had no record of this treatment and no corresponding medical records. *See* [122-10] 2-3.

9

Defendant therefore requested the EUO so that it could explore the nature and extent of these injuries with plaintiff. [*Id.*]. Indeed, as defendant explained, in the absence of the additional medical records (which it was also attempting to track down) and the continued EUO, "the only document[ed] injury for the accident of August 2009 may be a soft tissue sprain strain of your neck and maybe shoulder." [*Id.*] 3. This statement demonstrates that defendant's ability to assess the covered injuries and resolve plaintiff's claim was "actually hampered" by plaintiff's refusal to participate in a continued EUO, given that plaintiff's testimony could have illuminated what injuries were or were not attributable to the 2009 accident. *Cf. Direct Auto Ins. Co. v. Reed*, 76 N.E.3d 85, 95 (Ill. App. 2017) (rejecting insurer's argument that insured's failure to testify at arbitration hearing prejudiced insured's defense because insurer offered "nothing about what testimony was expected from [insured] at the arbitration hearing or how the absence of that testimony affected her defense in anything but a theoretical way").

For these reasons, defendant is entitled to summary judgment on plaintiff's contract claim based on plaintiff's willful breach of the cooperation clause.

### B. Section 155

"Section 155 of the Illinois Insurance Code provides an extracontractual remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits." *Nine Grp. II, LLC v. Liberty Int'l Underwriters, Inc.*, 168 N.E.3d 956, 964 (Ill. App. 2020). The statute provides that, "[i]n any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs," plus additional amounts set forth in the statute. 215 ILCS 5/155(1).

"The key question in a section 155 claim is whether an insurer's conduct is vexatious and unreasonable." *Nine Grp. II*, 168 N.E.2d at 964. "Whether a delay is vexatious and unreasonable is a question of fact that must be assessed based on the totality of the circumstances, taken in broad focus." *Id.* "[C]ourts have considered the insurer's attitude, whether the insured was forced to file suit to recover, and whether the insured was deprived [of] use of its property." *Id.* "Additional considerations include whether there is a bona fide dispute concerning coverage, the extent of the insurance company's evaluation and investigation of the claim, and the adequacy of communications between the insurance company and the insured." *Cook ex rel. Cook v. AAA Life Ins. Co.*, 13 N.E.3d 20, 37 (Ill. App. 2014). "No single factor–*e.g.*, the length of time or the amount of money involved–is controlling." *Nine Grp. II*, 168 N.E.2d at 964.

10

In this case, no reasonable jury could find that defendant's conduct in response to plaintiff's claim amounts to unreasonable and vexatious conduct. Defendant has never disputed that plaintiff's UIM claim was covered under the policy. *See* [128] 63. After the claim was filed, moreover, defendant opened an investigation, sought and obtained medical records from multiple sources, and communicated frequently with plaintiff. *See* [122-5] 1-2; [128] 63-64. That the claim remains pending is largely, and perhaps entirely, attributable to plaintiff's willful refusal to participate in the continued EUO. As discussed at length above, defendant requested the continued EUO to determine–in light of information disclosed at the first EUO about treatment that plaintiff allegedly received immediately after the accident and the fact that she was involved in two accidents after the 2009 accident–which injuries were attributable to the 2009 accident and which injuries were not. Given the bona fide question over the extent of plaintiff's injuries that were attributable to the August 2009 accident–and thus covered by plaintiff's policy–no reasonable jury could find that defendant acted unreasonably and vexatiously by requesting the continued EUO. *See Valdovinos v. Gallant Ins. Co.*, 733 N.E.2d 886, 889 (Ill. App. 2000) ("If a bona fide dispute existed regarding the scope of the insurance coverage, an insurer's delay in settling the claim may not violate section 155."); *see also Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) ("an insurer's conduct is not vexatious and unreasonable if . . . there is a bona fide dispute concerning the scope and application of insurance coverage").

Plaintiff's efforts to show that a triable factual issue exists on the Section 155 claim lack merit. First, plaintiff asserts that defendant prolonged the claims process by destroying her medical records, *see* [125] 9, but the evidence does not permit a reasonable jury to make such a finding. Plaintiff relies on a May 10, 2017 letter in which defendant's claims manager stated that, in the process of reviewing plaintiff's claim, she tried "to get the medical records previously available under the USAA claim for Mr. Porter's auto policy but [was] advised the medical information had already been destroyed." [122-5] 2. This letter establishes only that the medical records defendant gathered in connection with the insurance claim plaintiff made under her ex-husband's policy had been destroyed, not that defendant had destroyed any of plaintiff's medical records that were obtained during its investigation of her claim. Furthermore, plaintiff does not explain how defendant's destruction of documents it gathered while investigating a separate insurance claim amounts to bad-faith conduct respecting plaintiff's own claim. Second, plaintiff argues that defendant and its agents called her a liar during the investigation and described her claimed injuries as questionable. *See* [125] 11-12. However, plaintiff cites no evidence in the record showing that any of defendant's agents called plaintiff a liar. *See* [*id.*]; *see also* [128] 36 (plaintiff's letter to defendant complaining that claims adjuster "all but call[ed] me a liar"). In any event, "section 155 does not create a duty to settle, and a delay in settling a claim does not violate the statute if the delay results from a *bona fide* dispute regarding coverage." *McGee v. State Farm Fire & Cas. Co.*, 734 N.E.2d 144, 151 (Ill. App. 2000). Defendant was therefore entitled to investigate plaintiff's

11

claim and the extent of her injuries, particularly where the facts disclosed at the first EUO and plaintiff's involvement in the post-2009 accidents raised a bona fide question as to the extent of her covered injuries. Third, plaintiff suggests that defendant's request for the continued EUO must have been a stall tactic or otherwise improper because defendant previously offered to settle the case for $25,000.[5] *See* [125] 10-11. "If [defendant's] investigation had **not** been completed," plaintiff asks, "how or why does [defendant] enter into settlement negotiations and make a firm offer of $25,000 without proper evidence of [her] injuries, treatment, etc.[?]" [*Id.*] (emphasis in original). Even viewing this sequence of events in the light most favorable to plaintiff, the Court does not see how a reasonable jury could understand it to be evidence of unreasonable and vexatious conduct. That defendant made a $25,000 settlement offer in November 2017 based on what it then knew about plaintiff's claim, *see* [128] 29 (defendant's November 30, 2017 settlement offer), is not evidence that defendant's request for an EUO was in bad faith–particularly when plaintiff had rejected the earlier settlement offer and demanded six times that amount in January 2018.[6]

---

[5] Although settlement offers are inadmissible "to prove or disprove the validity or amount of a disputed claim," they can be admitted "for another purpose." Fed. R. Evid. 408(a), (b). One purpose for which a settlement offer may be admitted is to show, in a Section 155 case, that an insurer's settlement efforts are in bad faith. *See Jordan Mozer & Assocs., Ltd. v. Gen. Cas. Co. of Wisc.*, No. 14 CV 10264, 2017 WL 4281056, at *3 (N.D. Ill. Sept. 27, 2017) ("evidence of unreasonably low settlement offers is admissible to show bad faith"); *Norman v. Am. Nat'l Fire Ins. Co.*, 555 N.E.2d 1087, 1109 (Ill. App. 1990) (recognizing that "evidence of the original settlement offer made to the plaintiff by the defendant as well as subsequent settlement offers" are "admissible" in Section 155 cases). Therefore, the Court may consider plaintiff's argument based on defendant's prior settlement offer.

[6] In opposing summary judgment on the Section 155 claim, plaintiff asks that defendant be compelled to provide her with "access to all interoffice notes for this case" or to produce the notes for an in-camera review. [125] 10. Plaintiff "believes this would uncover [defendant's] 'Bad Faith' conduct and its motives to deny the case or wait for the statute of limitations to toll." [*Id.*]. This request is denied. Plaintiff has not explained (1) whether she sought these materials during discovery; (2) if she did not seek them, why not; or (3) if she did seek them and defendant refused to provide them, why she did not bring a motion to compel before discovery closed. The request is thus untimely. Second, plaintiff has not shown by way of affidavit or declaration that the absence of these notes means she cannot present "facts essential to justify [her] opposition" to summary judgment, such that it might be appropriate for the Court to defer consideration of the pending motion or permit her to conduct additional discovery. *See* Fed. R. Civ. P. 56(d). On this point the Court observes that it gave plaintiff an additional 30 days after the original briefing concluded to file any evidence she deemed appropriate, but plaintiff did not submit any such evidence (or even identify evidence that she wanted to present but was not in her possession). *See Lewis v. BNSF Ry. Co.*, No. 14-CV-7171, 2019 WL 95153, at *3 (N.D. Ill. Jan. 3, 2019) ("The requirements of Rule 56(d) are particularly apt where, as here, there has been an ample period in which to conduct discovery.").

12

Even viewing the evidence in the light most favorable to plaintiff, no reasonable jury could find that defendant's conduct in responding to plaintiff's UIM claim was unreasonable or vexatious. Defendant is therefore entitled to summary judgment on plaintiff's Section 155 claim.

## Conclusion

Defendant's motion for summary judgment [120] is granted.

_Heather K. McShain_

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: August 11, 2022**